UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ESTATE OF STEVEN B. HOJNA,**
deceased, by GREGORY HOJNA,
Personal Representative,

                Plaintiff(s),         CASE NUMBER: 04-75081
                                           HONORABLE VICTORIA A. ROBERTS

v.

**CITY OF ROSEVILLE, et al.,**

                Defendant(s).
_____/

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment. Defendants' motion was filed on June 9, 2006. Plaintiff's Responsive brief was due July 7, 2006. *See* Scheduling Order (Phase II), May 11, 2006. To date, however, Plaintiff has not filed a Response. Therefore, the Court will consider Defendants' unopposed motion.

For the reasons stated below, Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff Gregory Hojna brings this action as the Personal Representative of the Estate of Steven B. Hojna, who is deceased.[1] Plaintiff's claims arise from what he asserts was the wrongful death of the decedent after he (the decedent) was shot by two City of Roseville police officers responding to a domestic dispute. The named

---

[1] Plaintiff is the decedent's brother.

1

Defendants include the City of Roseville, Roseville Police Chief Richard Heinz, Sergeants Glandon and Waller, Lieutenant Clark and Officers Michael Berlin, Joseph Trombley, Thomas Pfeifer, David Lukasavage and Michael Saier.

The facts are undisputed. On February 3, 2002, Marlene Terry made a 911 call at approximately 4:30 a.m. complaining that the boyfriend of her daughter, Sheila Walters, tried to kill Walters by suffocation. Walters' boyfriend was decedent Steven Hojna.

Officers Pfeifer, Lukasavage and Trombley were the first to arrive on the scene. Pfeifer went to the door. Lukasavage stood near the driveway. Trombley checked the rear of the house. When Ms. Terry opened the door, Pfeifer saw Hojna come running up the stairs from the basement and into the kitchen. He was carrying a sledgehammer above his head. Walters was standing in the kitchen. Hojna hit Walters multiple times in the head with the hammer. Another person in the house, Anthony Fiori, tried to intervene. Hojna hit him on the hand with the hammer.

Pfeifer radioed what he saw, drew his weapon, ran into the house and ordered Hojna to stop. Walters was conscious but laying on the kitchen floor. Hojna ran into the basement and Pfeifer followed. He saw Hojna drop something as Hojna ran down the basement stairs. Officers Lukasavage and Trombley followed Pfeifer. On the way down, Trumbley noticed an open folding knife laying on the stairs.

Hojna ran into a bedroom in the basement, throwing boxes in Pfeifer's path along the way. The basement was dark and cluttered. Once inside the bedroom, Hojna closed and locked the door. Pfeifer kicked the bedroom door open. Hojna faced Pfeifer with the hammer raised. Pfeifer repeatedly ordered Hojna to drop the hammer. Hojna

ignored the order and slammed the door shut. Pfeifer decided to wait for backup before taking further action.

Officers Berlin and Saier arrived shortly thereafter and joined the other officers in the basement. The officers heard unusual noises coming from the bedroom--screams, thumps and moaning. Saier said it sounded like someone was getting hit with a hammer. So, he went upstairs to ask the others in the house whether anyone else could have been in the bedroom with Hojna and whether Hojna had other weapons. Fiori said that he did not know. Saier returned to the basement and the strange noises continued.

Berlin repeatedly yelled for Hojna to open the door and come out. The noises continued and the officers ultimately surmised that Hojna was hitting either himself or someone else with the hammer. Therefore, the officers decided to force their way into the room. Berlin positioned himself in front of the door and yelled out that he was going to kick in the door. The other officers stood nearby. Berlin, Trombley and Lukasavage drew their weapons. Berlin also had a baton in one hand.

When Hojna refused the officers' repeated orders to come out, Berlin kicked the door open. Hojna was standing inside with blood on his body and the hammer raised over his shoulder. Berlin backed up. Hojna started walking towards Berlin with the hammer still raised. Berlin took a few more steps back. Hojna lunged forward. Berlin fired two times in quick succession. At approximately the same time as Berlin, Trombley also fired two times.

Hojna was shot four times. He initially survived his wounds. However, per Defendants, Hojna's health was severely compromised. He was placed in a long term

care facility and died in October 2002. Although Hojna was charged with multiple crimes, he never stood trial.

Plaintiff brought suit alleging: 1) violation of 42 U.S.C. §1983 by the officer Defendants (Count II); 2) violation of 42 U.S.C. §1983 by the supervisory Defendants (Glandon, Waller, Clark and Heinz) (Count II); 3) municipal liability by the City of Roseville (Count III); and 4) assault and battery by Defendants Berlin and Trombley (Count IV). The City of Roseville and the supervisory Defendants were dismissed from this action by stipulation. *See* Stipulation and Order, August 2, 2006. Therefore, Counts II and III are moot. The remaining Officer Defendants--Berlin, Trombley, Pfeifer, Lukasavage, and Saier--request summary judgment.

## II.     STANDARD OF REVIEW

Defendants' Motion for Summary Judgment is filed pursuant to Fed. R. Civ. P. 56. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Rule

4

56(e).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.  If the nonmoving party does not respond with facts showing a genuine issue for trial, summary judgment is appropriate.  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

In this case, Plaintiff failed to file a response to Defendant's Motion for Summary Judgment.  Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  The moving party must always bear the initial burden of demonstrating the absence of a genuine issue of material fact, even if the party fails to respond.  *Id.* at 454-455.  "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id.* at 455.  Accord *Stough v. Mayville Community Schools*, 138 F.3d 612 (6th Cir. 1998).

### III.	APPLICABLE LAW AND ANALYSIS

#### A.	42 U.S.C. §1983

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law."[2]  *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir.

---

[2]42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

2003). Injuries caused by mere negligence do not constitute a "deprivation" of a constitutionally protected right. *Ahlers v Schebil,* 994 F. Supp 856, 864 (E.D. Mich. 1998).

It is undisputed that Defendants were acting under color of law, and Plaintiff alleges that Defendants' violated his First, Fourth and Fourteenth Amendment rights. Defendants deny that there was a constitutional violation, and they contend that they are entitled to qualified immunity in any event. The Court will first consider whether Plaintiff established a constitutional violation. *See Saucier v Katz*, 533 U.S. 194, 201 (2001)(where the defense of qualified immunity is raised, the court must first determine whether a constitutional violation has been established).

### i. Fourth Amendment

Plaintiff's claim that the officers used excessive force against the decedent is presumably asserted under the Fourth Amendment. Claims of excessive force by police officers during an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v Connor,* 490 U.S. 386, 395 (1989).

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id* at 396. Therefore, when analyzing such a claim the Court must consider: 1) the severity of the crime; 2) whether the suspect poses an immediate threat to the safety of officers or

---

> subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

others; and 3) whether the suspect is actively resisting arrest or attempting to flee. *Id*. The trial court must determine "whether the officers' alleged actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id* at 396.

### a. Defendants Pfeifer, Lukasavage and Saier

There is no support for Plaintiff's claim of excessive force by Defendants Pfeifer, Lukasavage and Saier.

In order to find an officer liable for excessive force, a plaintiff must prove that the officer: 1) actively participated in the use of excessive force; 2) supervised the officer who used excessive force; or 3) owed the victim a duty to protect against the use of excessive force. *Turner v Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Here, there is no evidence that Pfeifer, Lukasavage or Saier fired any shots or otherwise used force against the decedent. Nor were any of them on the scene in a supervisory capacity. Therefore, there is no basis for reasonable jurors to find the officers liable by the first or second means.

To the extent Plaintiff asserts that the officers are liable under the third prong for failing to prevent the shooting or restrain the shooting officers, there is no evidence to support that claim either. In order to establish excessive force for failure to protect a person from excessive use of force, a plaintiff must show that: 1) the officer observed or had reason to know that excessive force would be or was being used, and 2) the officer had both the opportunity and the means to prevent the harm from occurring. *Id*.

7

Plaintiff cannot make that showing in this case because there is no evidence that Pfeifer, Lukasavage or Saier was in a position to intervene to prevent Officers Berlin or Trombley from firing their weapons. It is apparent from the officers' reports and testimony that the sequence of events which led to the shooting occurred very quickly. There is no evidence that Pfeifer, Lukasavage or Saier had an opportunity to anticipate or stop the other officers from firing. Consequently, Plaintiff has not demonstrated a Fourth Amendment violation by Defendants Pfeifer, Lukasavage or Saier.

### b.     Defendants Berlin and Trombley

Plaintiff also failed to demonstrate a Fourth Amendment violation by Defendants Berlin or Trombley. The officers' unrefuted testimony is that they simultaneously fired at the decedent when he lunged towards Officer Berlin while wielding a sledgehammer. At that time: 1) the officers were aware that Steven Hojna had hit Ms. Walters multiple times in the presence of Officer Pfeifer; 2) Hojna indisputably posed an immediate threat to Officer Berlin since he appeared to be lunging towards Berlin with the intent to use the hammer; and 4) in the moments preceding the shooting, Hojna ignored repeated requests that he surrender and drop his weapon. Under these circumstances, reasonable jurors would not disagree that Officers Berlin and Trombley's actions were objectively reasonable. Therefore, their actions did not constitute a Fourth Amendment violation.

### ii.     First and Fourteenth Amendments

The basis of Plaintiff's First and Fourteenth Amendment claims is not clear. In the Complaint he alleges that the officers' actions deprived the decedent of freedom

8

from a deprivation of life and liberty without due process of law, freedom from summary punishment and freedom to freely associate with Plaintiff and members of the decedent's family. See Pl. Complaint at 19 (b-d). There is no evidence that Hojna was deprived of any of these claimed rights. Neither a First or Fourteenth Amendment violation has been established.

### iii.    Qualified Immunity

Because each of Plaintiff's constitutional claims fail on the merits, it is not necessary for the Court to reach Defendants' claim of qualified immunity. Without an underlying constitutional violation to support a §1983 claim, the question of qualified immunity is moot. *Adams v City of Auburn Hills,* 336 F.3d 515, 520 (6th Cir. 2003). Defendants' Motion for Summary Judgment on Count I is granted.

### B.    Assault and Battery

Plaintiff alleges that Defendants Berlin and Trombley committed an assault and battery against Steven Hojna. "An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991); *Smith v Tolberg*, 231 Mich. App. 256, 260 (1998). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Espinoza*, 189 Mich. App. at 119.

When an alleged assault and battery arises from an arrest, liability turns on

whether the arrest was lawful and, if so, whether the amount of force used was reasonable. When effecting a lawful arrest, an officer has the right to use the amount of force that is reasonably necessary under the circumstances to effect the arrest. *Delude v Raasakka*, 391 Mich. 296, 303 (1974); *Tope v Howe*, 179 Mich. App. 91,106 (1989). "[T]he measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." *Brewer v Perrin*, 132 Mich. App. 520, 528 (1984) (*quoting Barrett v United States*, 64 F.2d 148, 149 (D.C. Cir. 1933))(internal quotation marks omitted). An officer may take reasonable action to protect himself in the course of an arrest or an attempted arrest. *Delude*, 391 Mich. at 303.

Here, Berlin and Trombley were attempting to make a lawful arrest for, *inter alia*, Hojna's assault upon Ms. Walters. And, for the reasons stated above, reasonable jurors could not disagree that the officers' use of force to subdue and arrest Hojna was objectively reasonable under the circumstances. Defendants Berlin and Trombley's Motion for Summary Judgment on Count IV is also granted.

## IV.  CONCLUSION

Defendants Pfeifer, Lukasavage, Saier, Berlin and Trombley's Motion for Summary Judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated:  August 2, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 2, 2006.

S/Carol A. Pinegar
Deputy Clerk