UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF STEVEN B. HOJNA,
deceased, by GREGORY HOJNA,
Personal Representative,

               Plaintiff(s),         CASE NUMBER: 04-75081
                                               HONORABLE VICTORIA A. ROBERTS

v.

CITY OF ROSEVILLE, et al.,

               Defendant(s).
_____/

## ORDER

This matter is before the Court on Plaintiff Gregory Hojna's Motion for Reconsideration/Relief From Judgment. On August 2, 2006, the Court granted Defendants'[1] Motion for Summary Judgment and entered a Judgment in their favor and against Plaintiff. Plaintiff asks the Court to either reconsider the Order and Judgment, under Local Rule 7.1(g)(3), or grant him relief from judgment, under FRCP 60(b)(1) and/or (6). Plaintiff's motion is **DENIED**.

The Order in favor of Defendants was entered on the merits and without the benefit of a response from Plaintiff, inasmuch as Plaintiff failed to file a response. Plaintiff's attorney, Frank Rhodes, III, claims no response was filed because he was assured by the Court's staff via telephone that he would receive a briefing schedule.

---

[1] Defendants are Roseville police officers Michael Berlin, Joseph Trombley, Thomas Pfeifer, David Lukasavage and Michael Saier (collectively "the Officer Defendants" or "Defendants").

1

Rhodes says he never received it. Mr. Rhodes also asserts that "prior certain other motions have remained undecided without a briefing schedule or other actions for months and months without action so counsel for the Plaintiff's reliance upon the scheduling clerk's promise to mail the scheduling order is not unreasonable under the circumstances of this case." Pl. Motion at ¶8. He also asserts that it is "manifestly unfair to grant judgment by default without giving a party notice that she/he must perform by a certain date." *Id* at ¶7.

Counsel's arguments are unavailing. This Court's docket reflects that Mr. Rhodes failed to take the initiative and steps necessary to become an e-filer, thus requiring the Court to send him notices by mail. The Court's docket reflects that a scheduling order entered on May 11, 2006 which set forth the briefing schedule for dispositive motions. Under the Court's routine mailing practice, a copy would have automatically been mailed to Mr. Rhodes once it was discovered that he was not an e-filer. And, if Mr. Rhodes called and advised that he did not receive it, as he claims, it would have been mailed out a second time. The Court is not persuaded that its routine practice failed twice.

Also, it is utterly untrue that "prior certain other motions have remained undecided without a briefing schedule," inasmuch as another Court's routine practice of the Court is to enter scheduling orders on dispositive motions. Even without such a briefing schedule, this Court's local rules state clearly that responses to dispositive motions are due 21 days after service of the motion. *See* L.R. 7.1 (d)(1). Defendants filed their Motion for Summary Judgment on June 9, 2006 along with a Certificate of Service indicating that it was mailed to Plaintiff's Counsel on the same day. As an

2

attorney admitted to practice in the Eastern District of Michigan, presumably Mr. Rhodes was aware of the requirements of the local rules and his obligation to file a response to Defendants' motion, even without a briefing schedule; the local rules give "notice" that counsel must perform by a certain date absent a scheduling order from the court.

The Court finds that Mr. Rhodes -- as he has done in other cases before this Court -- simply failed to abide by the rules that pertain, and did so with arrogance. How long "motions have remained undecided" is irrelevant to Mr. Rhodes' obligation to abide by orders of the Court and the local rules. His conduct does not amount to "excusable neglect" within the meaning of FRCP 60(b)(1). Nor does it entitle Plaintiff to relief under the FRCP 60(b)(6) catchall -- "any other reason justifying relief from the operation of the judgment." District courts may only grant relief from judgment under 60(b)(6) in "'exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule,'" because "'almost every conceivable ground for relief is covered' under the other subsections of Rule 60(b)." *Blue Diamond Coal Co. v Trustees of UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir. 2001)(quoting *Olle v Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir. 1990)). Therefore, "courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity *mandate* relief.'" *Id* (*quoting Olle,* 910 F.2d at 365). This is not such a case. The Court will not vacate its Order and Judgment and allow Plaintiff to belatedly file a Response.

The Court will, however, consider Plaintiff's motion for reconsideration on the merits. Eastern District of Michigan Local Rule 7.1(g)(3) provides for reconsideration if the movant demonstrates a palpable defect by which the court and the parties have

3

been misled, and further demonstrates that correcting the defect will result in a different disposition of the case. "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Fleck v Titan Tire Corp.*, 177 F.Supp. 2d 605, 624 (E.D. Mich. 2001). No defect exists here which warrants reconsideration.

Plaintiff's decedent, Steven Hojna ("Hojna"), was shot by Defendants Berlin and Trombley while they attempted to arrest him. The decedent died months later, allegedly from complications related to his wounds. Plaintiff brought this action alleging: (1) that Defendants deprived the decedent of his First, Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. §1983 and (2) a state law claim for assault and battery. Defendants moved for summary judgment arguing that there was no constitutional violation and, alternatively, that they are entitled to qualified immunity. The Court granted Defendants' motion because it found: 1) there was no evidence to support the alleged constitutional violations; and 2) the assault and battery claim failed because jurors could not disagree that the officers' use of force was objectively reasonable. The Court did not reach the qualified immunity question.

Plaintiff asserts that there were palpable defects in the Court's ruling on his claims of excessive force in violation of the Fourth Amendment and state law assault and battery. Plaintiff argues that there is evidence which was not attached to Defendants' motion suggesting that Defendants created (or failed to intervene in) the harmful situation they claim they were defending themselves against and, therefore, their actions were not objectively reasonable under the Fourth Amendment or state law. Specifically, Plaintiff cites discrepancies in one of the officer's deposition testimony, which Defendants relied upon, and an internal "same day statement" the officer gave

4

immediately after the incident.

By way of background, Officers Pfeifer, Lukasavage and Trombley were the first to arrive on the scene, responding to a call that Hojna attempted to suffocate his girlfriend.[2] While standing at the entrance to the home, Officer Pfeifer saw Hojna hit his girlfriend multiple times in the head with either a ball-peen- or sledge- hammer, as well as another person in the home who tried to intervene on the woman's behalf:

> Writer [Pfeifer] observed [Hojna] run up the stairs from the basement into the kitchen, with a hammer above his head. He charged a female in the kitchen, later identified as Sheila, and began to strike her several times in the head with the hammer. The hammer had a wooden handle with a large head. Writer immediately ran toward [Hojna] identifying self as the police and ordering him to stop and drop the hammer. Writer also observed victim #2, Anthony[,] run at [Hojna] and attempt to disarm him. During the struggle Anthony was struck in the hand by the hammer. As writer ran toward [Hojna] I observed approximately 4 to 6 full strength blows to Sheila's head. She fell to the ground after the first, but [Hojna] continued to hit her head while she was down on the ground. As writer got within 4 feet of [Hojna] with weapon drawn, [Hojna] turned and ran to the top of the stairs.

Def. Motion, Exh. A at p. 10.

Despite Officer Pfiefer's orders for him to stop, Hojna ran into a bedroom in the basement and closed the door. While fleeing, Hojna discarded a knife on the steps leading into the basement. Pfeifer followed Hojna into the basement and kicked in the door. Hojna stood facing Pfeifer with the hammer raised. Pfeifer repeatedly ordered Hojna to drop the weapon. Hojna ignored the order, walked forward and slammed the door.

---

[2]The parties familiarity with the underlying facts and the Court's prior ruling is presumed. The facts and rulings will only be repeated here to the extent necessary to address Plaintiff's arguments.

5

Officers Berlin and Saier arrived shortly thereafter. While all five officers stood outside the bedroom door, they heard screams, thumps and moans from the room. Officer Saier asked another person in the house whether anyone else could be in the basement bedroom with Hojna and whether Hojna had other weapons. The person Saier spoke with said he did not know.[3]

Because of the noises, Berlin says in his statement that they thought someone else might have been in the room with Hojna. Pl. Exh. 2 at p.5. There was also speculation that Hojna was harming himself, and the officers did not know whether there was a window in the bedroom through which Hojna could escape. Berlin repeatedly yelled for Hojna to open the door and come out while he also pounded on the door with his baton. As the officer-in-charge, Berlin says he made the decision that the officers would enter the room because of the possibility that the screams were from a second victim. Pl. Exh. 2 at p. 6. The officers lined up, Berlin kicked in the door, and the officers were greeted with pools of blood and Hojna advancing with a raised hammer, refusing Berlin's orders to stop and drop the weapon. Pl. Exh. 3 at p. 5, 16. In his same day statement, Officer Trombley stated that Berlin stepped back after he kicked in the door. Pl. Exh. 3 at p. 18. Berlin says the same in his deposition. Trombley said he and Berlin fired when Hojna was about five feet from them. Pl. Exh. 3 at p. 5. Berlin had not had his gun drawn up to that point. However, as Hojna started to come forward,

---

[3] Plaintiff asserts that Officers Pfeifer, Lukasavage and Saier knew that Hojna was only armed with a hammer. However, there is no evidence to support the claim. Officers Pfeifer and Saier testified to the contrary and Plaintiff does not present evidence which refutes their testimony. Def. Motion, Exh. B at p. 19, 22; Exh. D at p. 26-27.

6

Berlin drew his weapon and fired twice. Trombley fired as well.

Plaintiff points out that, contrary to his deposition testimony and claim in his summary judgment motion, Berlin seems to indicate in his same day statement that he stepped forward, not back, after he kicked in the bedroom door.[4]  Pl. Exh. 2 at p. 9. Because of this discrepancy, Plaintiff asserts that there is a question of fact regarding whether Berlin's actions were objectively reasonable since he "move[d] from a position of relative safety towards a person armed with a hammer which would only be dangerous if [Hojna] swung it at him."  Pl. br. at p. 3 (Statement of Fact).  Plaintiff argues that the officers provoked the situation by kicking in the door and "advancing on a person only armed with a hammer," and that Berlin put himself in a position where he faced deadly force.  Pl. br. at p. 6 (Argument).  Plaintiff further argues that Officers Pfeifer, Lukasavage and Saier are equally liable because they failed to object or intervene to prevent Berlin's actions.

The Court is not persuaded that Plaintiff's illumination of the discrepancy in Berlin's testimony reveals a palpable defect which warrants a different ruling.  Plaintiff's burden in order to avoid summary judgment is to show that there is a "genuine issue as to any *material* fact."  FRCP 56(c)(emphasis added).   A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th

---

[4] Berlin said he "stepped into the doorway" and "squared off with it."  Pl. Exh. 2 at p. 9.

Cir. 1984).

Here, the discrepancy in Berlin's statements does not create a material question of fact. Even if Berlin advanced towards Hojna rather than stepping backwards, there is no evidence to dispute Berlin and the other officers' claim that Hojna continued to move towards Berlin with the hammer cocked despite Berlin's repeated orders for him to stop and drop the weapon. Since Hojna persisted in advancing towards Berlin, the unrefuted evidence suggests that he (Berlin) was in harms way regardless of whether he stepped forward or backwards. There is no evidence, as Plaintiff claims, that Berlin was in "a position of relative safety" but for taking one or more steps forward.

When Hojna continued to come forward after being ordered to stop, Plaintiff asserts Defendants had reason to assume that Hojna was going to stop at the threshold and just shut the door as he had earlier when Pfeifer kicked in the door. There is no merit to this assertion. There is no evidence that Berlin was aware of what occurred between Pfeifer and Hojna when Pfiefer kicked in the door. When questioned during his deposition, Berlin could not recall whether Pfeifer advised him. Def. Motion, Exh. E at pp. 40-41.

Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v O'Connor*, 490 U.S. 386, 396 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397. "The calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id* at 396-397.

The unrefuted evidence shows that Defendants were confronted with a volatile suspect who violently attacked two people in one of the officer's presence, fled when ordered to stop, and barricaded himself inside a room. While in the room, Hojna ignored orders to come out and the officers heard repeated sounds which suggested that Hojna was striking himself or someone else with the hammer. When the door was forced open, Officer Berlin said he immediately noticed pools of blood in the room and blood on Hojna's head. And, despite Berlin and Trombley's drawn weapons and orders to stop, Hojna continued to move towards Berlin with the hammer raised as though he was preparing to strike. Under these circumstances, Defendants' actions in response to an apparent imminent threat were objectively reasonable.

The cases Plaintiff relies upon to support his assertion to the contrary are inapposite because in each case the officers attempted to justify using deadly force although their own actions created the threat of harm. Specifically, in *Yates v City of Cleveland*, 941 F.2d 444 (6th Cir. 1991), the Court affirmed the district court's denial of qualified immunity where the officer proceeded into the dark hallway of a residence, at 2:45 a.m., without identifying himself as an officer, using his flashlight or wearing his police hat before shooting plaintiff. The officer claimed plaintiff (and his three brothers) knocked him back out the door. Plaintiff said he and his brothers descended the steps because they thought there was an intruder, and that the officer fell backwards when he tripped over a floorboard. Notwithstanding the disputed facts, the officer argued that he

reasonably feared for his safety and it was objectively reasonable for him to use deadly force when he was lying on his back and plaintiff and his brothers were on the steps; at that moment, the officer said there was an immediate threat to his safety. The *Yates* Court rejected this argument. The Court held that the manner in which the officer proceeded into the residence was not objectively reasonable.

Similarly, in *Estate of Starks v Enyart*, 5 F.3d 230 (7th Cir. 1993), the Court affirmed the district court's denial of qualified immunity for the officer's fatal shooting of the decedent where the officer jumped in front of the moving car in which the decedent was attempting to escape. The decedent was alleged to have stolen the car. It was disputed whether the officer moved in front of the car before or after the decedent began to accelerate. The officer argued that he was entitled to qualified immunity even if he moved in front of the accelerating car because his actions were reasonable to stop a fleeing felon and, once in front of the car, he faced immediate danger due to the decedent's reckless driving. The *Starks* Court disagreed. Assuming plaintiff's version of events (that the officer jumped in front of the moving vehicle), the Court held that it was not objectively reasonable for the officer to use deadly force where the decedent had not committed a violent felony, he attempted to escape without menacing officers or civilians and without a weapon, and the officer stepped into the path of the decedent's car, leaving the decedent without sufficient time to stop the car. The Court stated that "[p]olice officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force." 5 F.3d at 234.

*Yates* and *Starks* are distinguishable because the unrefuted evidence is that

Hojna -- not Berlin -- created the threat of harm by advancing towards the officers in a menacing fashion, with a weapon, and without regard for Officer Berlin's orders to stop.

The second argument Plaintiff makes is that Defendants currently claim that "[D]efendant Berlin kicked the door behind which Mr. Hojna was barricaded to 'save' a speculative person from being injured by Mr. Hojna." Pl. br. at p. 2 (Statement of Facts). But, Plaintiff says Berlin "did not claim he forced the door to protect unknown persons allegedly in the bedroom with Mr. Hojna." Pl. br. at p. 3 (Statement of Facts). The apparent implication is that Defendants manufactured a reason to justify forcefully entering the room. However, there is no evidence to support such a finding. Officer Berlin explicitly stated in his same day statement that he initially decided to wait for a back up unit, but decided instead to force the door when he continued to hear screams and other noises coming from the room. Pl. Exh. 2 at pp. 4-6. Berlin said he thought there might be a second victim in the room with Hojna, and another person in the home who was questioned by Officer Saier could not rule out the possibility. This evidence is unrefuted. Therefore, there is no basis to find that the officers' claimed belief that another person may have been in the room with Hojna was unfounded. Berlin's decision to forcefully enter the room was objectively reasonable.

In sum, the evidence -- even when viewed in a light most favorable to Plaintiff -- supports the Court's earlier conclusion that the Defendants' use of force was objectively reasonable under the circumstances and thus, no Fourth Amendment or state law assault and battery violations occurred. It is not necessary for the Court to reach Defendants' claim that they are entitled to qualified immunity.

Plaintiff's motion for reconsideration or relief from judgment is **DENIED**.

**IT IS SO ORDERED.**

                                                  s/Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated: August 16, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 16, 2007.

s/Linda Vertriest
Deputy Clerk

---